# City of Allegheny, Appt., *v.* Chartiers Valley Gas Company.

A natural gas company which had been acting under the general corporation act of 1874 and which has surrendered its charter and accepted the provisions of and become incorporated under the act of May 29, 1885, and

NOTE.—For the necessity of municipal consent to the laying of pipes by a natural gas company, see note to Meadville Fuel Gas Co. v. Meadville Natural Gas Co. 2 Sad. Rep. 549. See also Butler's Appeal, 4 Sad. Rep. 19; and McDevitt v. People's Natural Gas. Co. 4 Sad. Rep. 445.

As to the rights of gas companies, and municipal regulation thereof in general, see Penn Fuel Co. v. Com. 15 W. N. C. 425; Sterling's Appeal, 111

which company "had to some extent prior to the passage of this act begun supplying natural gas within a city" and had laid its pipes for such purpose therein, is within the exceptions contained in the 14th and 16th sections of the act and has the right to lay other pipes in such city without having previously obtained the assent of the city.

The Chartiers Valley Gas Company, incorporated under the general act of 1874, having prior to the act of 1885, laid a pipe and supplied with gas one mill or factory in the city of Allegheny and having since accepted the provisions of said act and become incorporated thereunder, has the right to lay other pipes in said city without first obtaining an ordinance or the consent of the city.

(Argued November 4, 1887. Decided November 11, 1887.)

October Term, 1887, No. 214, W. D., before GORDON, Ch. J., PAXSON, STERRETT, and WILLIAMS, JJ. Appeal from decree of Common Pleas No. 1 of Allegheny County making perpetual an injunction, restraining appellant city from interfering with or preventing appellee company from laying and operating pipes for supplying natural gas. Affirmed.

The bill alleged that the Chartiers Valley Gas Company was incorporated and had laid its pipes and was supplying natural gas in the city of Allegheny prior to the passage of the act of May 29, 1885, and that subsequently thereto it surrendered its charter, accepted the provisions of the act, and became incorporated thereunder, by reason whereof plaintiff had, under the 12th, 13th, 14th, and 16th sections of the act, the right without the assent of councils to enter upon the streets and lay down its pipes for transporting and supplying natural gas; but while so engaged it was stopped by defendant; wherefore, plaintiff prayed for a decree establishing its rights and for an injunction to restrain defendant from interfering therewith.

The answer denied plaintiff's alleged right.

The court, STOWE, P. J., granted a preliminary injunction, filing the following opinion:

I am of opinion that plaintiff company has a right under the

Pa. 35, 56 Am. Rep. 246, 2 Atl. 105; Truby v. Palmer, 3 Sad. Rep. 156; Johnston v. People's Natural Gas Co. 4 Sad. Rep. 215; Butler v. Butler Gas Co. 4 Sad. Rep. 19; Pittsburgh's Appeal, 115 Pa. 4, 7 Atl. 778; Cincinnati Gaslight Co. v. Avondale, 43 Ohio St. 257, 1 N. E. 527; St. Louis Gaslight Co. v. St. Louis, 86 Mo. 495; Kenney v. Consumers' Gas Co. 142 Mass. 417, 8 N. E. 138; Jersey City Gaslight Co. v. Consumers' Gaslight Co. 40 N. J. Eq. 427, 2 Atl. 922.

14th section of the act of May 29, 1885, entitled "An Act to Provide for the Incorporation and Regulation of Natural Gas Companies" to 'enter upon and lay down its pipes or conduits on any street or highway of Allegheny city without the assent of the councils of said city.

That in doing so, it shall, as provided in § 11, do as little damage as possible to such streets or highways, and impair as little as possible the free use thereof, subject to such reasonable and proper regulations as the councils have or may by ordinance adopt; but that as to the manner of laying the pipes and the character thereof with respect to safety and public convenience, the sole power of finally determining what precaution shall be taken in the laying of the pipes, belongs to the court in case of any dispute between the gas company and the city.

This does not take away the right of the city to adopt by ordinance regulations regarding safety and public convenience as to the manner in which the pipes shall be laid, involving depth, provision for protection from escaping gas, pressure of gas in transportation, and perhaps location of route under some circumstances, involving possible danger, as it may deem proper; but, even if this is done, the fact still remains that if the company is not satisfied with the regulations or restrictions imposed by the ordinance, the court alone shall say how the pipes shall be laid and determine without regard to the ordinance what precautions shall be taken as regards safety and public convenience.

The present aspect of this case, as presented, is solely as to the right of plaintiff to enter upon the streets without the consent of the city councils. On this question we think the city is wrong, and therefore shall enjoin it from preventing plaintiff from entering upon and laying down the company's pipes on its streets, provided the same is done under the regulations the city now has in regard to entering upon and tearing up its streets for the laying of gas pipes, if any such exist, or if none now exist, any such reasonable regulations as may be presently prescribed by ordinance, in regard to damage to the streets and the impairment or obstruction of their use, by reason of the laying of the pipes, and while the same is being done the question of high pressure or low pressure, escape vents, and such other matters as are involved in the public safety and con-

venience is not now properly before us, and under the evidence adduced could not be determined.

A preliminary injunction in accordance with the foregoing views will be granted upon security as required by law being given by plaintiff in the sum of $3,000.

The cause was referred to a master, Walter Lyon, Esq., who recommended that the injunction be dissolved and the bill dismissed, and returned the following statement of facts:

1. That the plaintiff was originally incorporated under the "corporation act of 1874," by letters patent, dated July 31, 1883, with a capital stock of $2,500, for the purpose of furnishing light, heat, and fuel by means of natural gas, and to manufacture and supply gas for light, heat, and fuel to the borough of Mansfield, Allegheny county, Pennsylvania, and to such other persons, partnerships, and corporations residing therein or adjacent thereto as might desire the same—the business of said corporation to be transacted in the borough of Mansfield.

That said plaintiff, prior to the passage of the act of May 29, 1885, and prior to its acceptance thereof, was not the owner of letters patent similar to those designated in finding first, above, or of any letters patent, and covering the city of Allegheny.

3. That, acting under said charter, the said plaintiff was engaged prior to May 29, 1885, in transporting, supplying, and dealing in natural gas for fuel and heating purposes in the borough of Mansfield; and was also engaged in the same business in the city of Pittsburgh and the territory between it and the borough of Mansfield, the gas being supplied from the natural gas wells in the county of Washington.

4. That, between the first and fifth of April, 1885, the said plaintiff laid a 6-inch line of pipe across the Ohio river from the city of Pittsburgh and into and within the corporate limits of the city of Allegheny, connecting with the private property and iron mills of the firm of Lindsay & McCutcheon, located on the northerly bank of the river, and bounded on the west by Lighthill street.

5. That said pipe line after it crossed the river was laid along the shore a short distance and from there up through the mill yard of Lindsay & McCutcheon to the tank house of

the mill; from there the gas was distributed in the mill, and a gate was placed on said pipe at the line of mill property and Lighthill street; from there a short line was laid up Lighthill street to the adjacent property of Smith, Sutton, & Company, but this pipe was never used.

6. That the said pipe line so laid across the river was not laid upon or across any of the highways, streets, and alleys of the city of Allegheny, except the short line on Lighthill street and in crossing Bank lane (or South avenue), as laid out in the original plan of Allegheny city, which Bank lane, at the point at which said pipe line passes through it, is not and has never been opened or used as a street, but was then, at the time of laying said pipe through it, used and occupied, as was all the ground between the mill buildings of Lindsay & McCutcheon and the Ohio river, as the cinder bank of said mill.

7. That the first gas was supplied to Lindsay & McCutcheon's mill on April 6, 1885, eighteen furnaces and the boilers being then supplied. The supply was not at this time sufficient for the entire mill, but it was increased in May, and the entire mill was supplied during the summer of 1885, as fast as the new wells came in.

8. That in May, 1885, prior to the 29th of the month, a connection was made on the premises of Lindsay & McCutcheon with the pipe of the plaintiff by the Allegheny Heating Company (a corporation then supplying natural gas in Allegheny city), from 4 o'clock on a Saturday evening until the next Monday morning, to enable it to obtain gas to supply its contracts, its ordinary supply having been shut off.

9. That the facts set forth in findings fourth, fifth, sixth, seventh, and eighth, and the actions of the plaintiff as recited therein were all without the assent and without the knowledge of the defendant.

10. From the time the plaintiff made its connection with the mill of Lindsay & McCutcheon, in April, 1885, it made no attempt to extend its lines in the city of Allegheny or use its streets until the attempt made by it in May, 1886, when the defendant interfered with it, as complained by plaintiff in its bill in this case. And when it did make the attempt, in May, 1886, it crossed the river and entered the city at a point three miles below the point at which it had crossed to Lindsay & McCutcheon's mill.

11. That the plaintiff, subsequent to the act of May 29, 1885, surrendered up its letters patent, accepted the provisions of said act and received new letters patent dated August 19, 1885, with a capital stock of $1,000,000, and in which, among other places, the city of Allegheny was mentioned as presently to be supplied with gas by said company.

12. That the city of Allegheny is a city with a population of over 90,000 people, having in 1885 about 67 miles of paved streets, about 35 miles of unpaved streets, and about 30 odd on paper, not opened; there are 13,574 dwelling houses supplied with water and 305 iron mills and other industries supplied, and about 800 buildings not supplied. In the fifth ward where the mill of Lindsay & McCutcheon is located there are 1,569 dwellings and 27 mills, etc., supplied with water.

13. The following natural gas companies have been admitted into the city of Allegheny by separate special ordinances: The Allegheny Heating Company, which began in 1884; the United Gas & Fuel Company which began in April or May, 1886; the People's Pipage Company which began in May or June, 1886.

14. That plaintiff has never requested the assent of the councils of Allegheny city to enter it and to enter upon its streets, nor has the same been given by said councils.

15. That the entry of the plaintiff into the city of Allegheny prior to the passage of the act of May 29, 1885, was unlawful and without color of right under charter or otherwise; and was not made bona fide with the intention and for the purpose of supplying the public with natural gas.

The act of May 29, 1885, entitled "An Act to Provide for the Incorporation and Regulation of Natural Gas Companies," provides, *inter alia,* that the transportation and supply of natural gas for public consumption is thereby declared a public use; that corporations then or thereafter engaged in such business shall have the right of eminent domain; that the laying of pipes in streets and highways shall be done so as to do as little damage as possible; and it further provides in §§ 12, 13, 14, and 16, as follows:

Sec. 12. In all cases where any dispute shall arise between such corporations and the authorities of any borough, city, township, or county, through, over, or upon whose highways, or

between it and any land owner or corporation, through, over, or upon whose property or easement, pipes are to be laid, as to the manner of laying the pipes, and the character thereof with respect to safety and public convenience, it shall be the duty of the court of common pleas of the proper county, upon the petition of either party to the dispute, upon a hearing to be had, to define by its decree what precautions, if any, shall be taken in the laying of pipes, and by injunction to restrain their being laid in any other way than as decreed. It shall be the duty of the court to have the hearing and make its decree with all convenient speed and promptness. Either party shall have a right to appeal therefrom, as in cases of equity, to the supreme court, but the appeal shall not be a *supersedeas* of the decree, and proceedings shall be had in like manner, upon like petition, when and as often as any dispute arises as to pipes already laid, to define the duty of such corporations as to their relaying, repair, amendment, or improvement.

Sec. 13. Companies incorporated under this act, and not referred to or included in the next succeeding section hereof, shall not enter upon or lay down their pipes or conduits on any street or highway of any borough or city of this commonwealth, without the assent of the councils of such borough or city by ordinance duly passed and approved.

Sec. 14. Any association of persons or corporations heretofore engaged in the business of transporting or dealing in natural gas for any purpose, whether under color of a charter or letters patent of the commonwealth, and whether authorized by said charter or letters patent so to do or not, and any corporation by its charter authorized to furnish heat from gas, upon accepting the provisions of this act by writing under seal of the company, filed in the office of the secretary of the commonwealth, and filing therewith its letters patent of the charter (which shall be a surrender and acceptance thereof), shall thereupon be a body corporate hereunder, and be entitled to and possessed of all the privileges, immunities, franchises, and powers conferred by this act upon corporations to be created under the same; and all the property, rights, easements, and privileges belonging to said associations and corporations theretofore acquired by gift, grant, conveyance, municipal ordinance, or assignment upon such acceptance as aforesaid, shall be, and hereby is ratified, approved, confirmed, and assured unto such

acceptors and corporations with like effect, and to all intents and purposes as if the same had been originally acquired by and under the authority of this act; and such company or corporation shall thereafter be governed solely by the provisions of this act; and the Governor shall forthwith issue to the said acceptors letters patent under this act, under the same name as the company bore which surrendered its charter or letters patent: Provided, That this section shall only apply to associations or corporations actually engaged in the transportation and supply of natural gas, or the supply of heat from the same at and prior to the passage of this act: And provided further, That such corporations surrendering their charters and accepting the provisions of this act, shall with acceptance and as a part thereof, state in writing the place or places where it is presently intended to mine for and produce or receive natural gas; and the place or places to which it is to be presently supplied; the general route of its pipe lines; the term for which the corporation is to exist; the amount of its capital stock, and the number and par value of its shares.

Sec. 16. That this act shall not be so construed as to permit any corporation accepting its provisions under and by virtue of § 14 hereof, to enter into any city or borough without the assent of councils, except where the corporation so accepting under § 14 had to some extent prior to the passage of this act, begun supplying natural gas within such city or borough, or had laid pipes for such purpose therein.

After argument upon exceptions to the master's report and upon motion to dissolve the injunction, the court sustained the exceptions and entered a decree that the injunction be made perpetual.

Whereupon, defendant appealed, assigning as error the entry of the said decree and the refusal to dismiss the bill.

*W. B. Rodgers,* for appellant.—The gas company had no authority under its charter under act of 1874, to engage in the business of transporting and supplying gas in the city of Allegheny; and as a matter of fact it had not been so engaged prior to the act of 1885. The master finds as a fact that this material averment of plaintiff's bill is untrue; that the laying of its one pipe on one street to supply one mill was not made bona fide with the intention and for the purpose of supplying the public

natural gas, and that the construction of this one pipe was with-out the assent of the city, and without color of right under its charter or otherwise.

Statutes are to be construed not liberally but to effectuate the intention of the legislature. Com. v. Fraim, 16 Pa. 163; Big Black Creek Improv. Co. v. Com. 94 Pa. 450.

The act of 1885 was due to the suggestion of this court in Penn Fuel Co. v. Com. 15 W. N. C. 425, that an act should be passed for the regulation of these companies.

The purpose of §§ 14–16 was to protect companies which had in good faith acquired property and been organized under the general corporation act of 1874; but surely there is no in-tention to do more than protect such companies in the enjoy-ment of rights previously held and enjoyed by them, and not as here claimed to exempt them from the main purposes of the act, or to relieve them from the necessity of obtaining consent from city and boroughs for additional laying of pipes.

It is the policy of the law that cities should control or regu-late the use of their streets. Com. v. Central Pass. R. Co. 52 Pa. 517; Jersey City Gaslight Co. v. Consumers Gas Co. 40 N. J. Eq. 427, 2 Atl. 922.

Grants of corporate powers are strictly construed. Com. v. Erie & N. E. R. Co. 27 Pa. 351, 67 Am. Dec. 471; Sedgw. Stat. & Const. L. 2d ed. p. 296.

Generally on behalf of the city of Allegheny we claim that to hold, as did the lower court in this case, that the legislature intended to allow a rechartered or rehabilitated company under § 14, and which never had an ordinance or permission to enter into the streets of a borough or city, the right to so enter *ad libilum,* without obtaining permission of council is:

1. Against the well settled policy of the state in its legislative relation to the streets of its different cities;

2. Against the spirit and interest and policy of the act of May 29, 1885, as evidenced by the definite restriction imposed in § 13 of the act upon the class of companies mainly and primarily contemplated by the act;

3. Against (or might, under the peculiar circumstances of this case, have been most strongly against) the spirit and intent of § 2 of the act, which provides against exclusive privilege or claim of privilege in favor of any company or corporation;

4. Against the justice and equity of the situation and facts

under which the plaintiff in this case claims the right of entry without assent of councils;

5. Against the fair and reasonable construction of § 14, which plainly means only the preservation to rechartered companies of their properties, real and personal, acquired by gift, grant, etc., and of their rights, easements, and privileges acquired by municipal ordinance, if any such rights, easements, and privileges by ordinance the said companies had been given: thus by this section the Chartiers Gas Company, after it took out its new charter had preserved to it the benefits of the ordinance passed in its favor by the councils of Pittsburgh in 1884, and required no further or other assent to enter upon the streets of Pittsburgh; but as to Allegheny city, it had never, prior to its rechartering, had an ordinance or permission to enter, and so it had no rights, easements, or privileges in Allegheny city to be preserved, confirmed, and assured to it under § 14 of the act.

*Kennedy & Doty,* for appellee.—The court below finds that appellee "had, to some extent, prior to the passage of this act, begun supplying gas within the city" of Allegheny, and "had laid pipes for such purpose therein" and with the bona fide intention of supplying the public with natural gas to the extent of its ability.

Appellee is thus expressly within §§ 14 and 16 of the act. These words will bear no other construction.

When the intention of the legislature is plain, from the words of the statute, the court cannot look elsewhere to find a contrary intention. Potter's Dwarr. Stat. pp. 127, 128, 135, 141, 143–146; Sedgw. Stat. & Const. Law, pp. 194, 195, 205–207, 209, 234–236.

As said in Pittsburgh v. Kalchthaler, 114 Pa. 547, 7 Atl. 921, "it is always unsafe to depart from the plain and literal meaning of the words contained in the legislative enactments out of deference to some supposed intent or absence of intent."

There is nothing in the act requiring corporations coming within the exception to procure the assent of councils. The appellant must show where the assent of councils is demanded. Streets belong to the public generally, and are under the control of the legislature. Mills, Em. Dom. § 202; Dill. Mun. Corp. §§ 683, 680, 701; Philadelphia & T. R. Co.'s Case, 6 Whart. 25, 36 Am. Dec. 202.

The streets of cities are public highways, and as such, under the control of the state alone, and the state may grant the use of them against the will of the municipality. Mills, Em. Dom. § 202; Dill. Mun. Corp. § 683.

PER CURIAM:

We think the conclusion reached by the court below is correct. The fact found, and not seriously disputed, is that the plaintiff had, "to some extent," prior to the passage of the act of 1885, begun to lay its pipes within the city of Allegheny in good faith for the purpose of supplying the said city with natural gas; such being the case it was within the exception of the act, and might proceed with its work independently of an ordinance.

Appeal dismissed, and decree affirmed; costs to be paid by appellant.